UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL L. HOLLOWAY,

    Plaintiff

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 03-74737

District Judge Lawrence P. Zatkoff
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Cheryl L. Holloway brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Social Security Disability benefits. Before the Court are the parties' cross-motions for summary judgment, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 5, 2001 alleging disability as of May 9, 1998, and a February 25, 2002 Supplemental Security

Income ("SSI") application alleging disability as of May 9, 1999 (Tr. 58-60, 193-195). On April 24, 2003, Administrative Law Judge (ALJ) Alfred H. Varga found that Plaintiff was not disabled (Tr. 213). After Plaintiff filed suit in this Court, Defendant stipulated to a remand on the basis that the SSA's Office of Hearings and Appeals was unable to locate the tape of the administrative hearing (Tr. 225). ALJ Varga conducted a second hearing on November 3, 2004 in Oak Park, Michigan (Tr. 241). Plaintiff, represented by attorney Kenneth Laritz, testified. (Tr. 244-258). Vocational Expert (VE), Pauline Pegram also testified (Tr. 259-263). On January 21, 2005 ALJ Varga found that Plaintiff was not disabled because although unable to perform any of her past relevant work, she retained the residual functional capacity (RFC) to perform a significant range of sedentary work (Tr. 31). On July 21, 2004 the Appeals Council denied review (Tr. 6-7). On October 17, 2006, the Honorable Lawrence P. Zatkoff reinstated Plaintiff's claim [Docket #9].

**BACKGROUND FACTS**

Plaintiff, born April 2, 1978, was 26 when the ALJ issued his decision (Tr. 32). She completed ninth grade, working previously as a cashier and caregiver[1] (Tr. 26, 66). Plaintiff alleges disability due to scoliosis (Tr. 65).

**A.     Plaintiff's Testimony**

Plaintiff, 26, testified that she had received "special education" math while attending school, stating that although she could read, she was "not good at math at all" (Tr. 245). She

---

[1]Contrary to the statement on her DIB application, Plaintiff testified at the hearing that she had only completed eighth grade (Tr. 244).

reported lower back pain as a result of scoliosis (Tr. 245). She alleged that in addition to back pain, her condition created hip pain, as well as lower and upper extremity discomfort to the extent that she experienced difficulty sleeping (Tr. 246). She reported taking Flexeril to help her sleep as well as Tylenol #4, as needed (Tr. 246).

Plaintiff testified that her condition prevented her from walking an entire block, stating further that she was unable to sit for more than 15 to 20 minutes before requiring a position change (Tr. 247-248). She reported that her medications caused nausea (Tr. 249). Plaintiff testified that her treating physician did not recommend surgery due to the risk of paralysis (Tr. 249-250). She claimed that her condition obliged her to lie down two to three hours a day with her legs elevated (Tr. 251). She indicated that her condition had worsened since her first administrative hearing, adding that a recent pulmonary test yielded abnormal results (Tr. 252). She stated that she also received counseling for depression, alleging that she had crying spells "[a]t least once a day" (Tr. 250). Plaintiff reported that she had undergone a tubal ligation after her third child was born, attributing her difficult labor to her back condition (Tr. 254-256).

### B. Medical Evidence

#### i. Treating Sources

Plaintiff's school records show that in first grade, she was referred for psychological testing because of slow academic progress (Tr. 150). Beth E. Avadenka, M.A., found that Plaintiff exhibited "borderline to low average intelligence" (Tr. 151). The same year, Plaintiff qualified for learning disability certification, with a recommendation of special

education classes for Reading and Math (Tr. 147). At the age of ten, Plaintiff reentered the mainstream educational curriculum (Tr. 133).

Imagining studies performed in July, 2001 show a "marked scoliosis of the thoracic spine" measuring 60 degrees "with convexity to the right" (Tr. 152). In August, 2001, Shivajee V. Nallamouthu, D.O., observed that Plaintiff was "able to ambulate and get on/off the [examining] table without any problems (Tr. 154).

In August, 2001, Garfield Johnson, M.D., noting the presence of thoracolumbar scoliosis, recommended conservative management including physical therapy, nocturnal bracing, weight reduction, and anti-inflammatory drug therapy (Tr. 185). In October, 2001, Todd Best, M.D., found the presence of "[t]otal permanent disability," advising Plaintiff to quit smoking (Tr. 175, 176). In January, 2002 Best found the presence of "very severe scoliosis," opining, however, that surgery was not advisable (Tr. 169). Best noted further that Plaintiff had not attempted physical therapy or used back braces (Tr. 169). He concluded by stating that Plaintiff complained of thoracic back pain at a level of 10 on a scale of one to 10, with shooting pains affecting her ribs, neck, arms, and hips (Tr. 170). Best recommended that Plaintiff continue to use Naprosyn and Tylenol #3 and begin a program of physical therapy (Tr. 171). He noted that lower extremity studies showed the absence of neuropathy, myopathy, or radiculopathy (Tr. 172). Imaging studies performed on Plaintiff's lumbar spine during the same period showed only mild degenerative changes (Tr. 173).

In January, 2002, Dr. Juvvala Reddy diagnosed Plaintiff with depression, assigning

her a GAF of 55[2] (Tr. 191). Reddy noted that Plaintiff expressed a willingness to try antidepressants (Tr. 191). Reddy prescribed Wellbutrin along with supportive therapy (Tr. 192).

In August, 2004, imaging studies of Plaintiff's chest and thoracic spine and lumbar spine showed clear lungs along with no evidence of a "malalignment or fracture" (Tr. 238). The next month, Dr. Best conducted an updated assessment of Plaintiff's condition:

> "she is unable to do housework and shopping. She would not be able to bend or twist at the waist, squat, Neil (sic), crawl, climbing ladders were (sic) stairs. Her job would have to allow a [sit/stand] position. She could not lift, push, pull or carry more than 10 pounds maximum. Her physical impairment and disability is permanent"

(Tr. 240).

### ii. Consultive Sources

A Physical Residual Functional Capacity Assessment performed in April, 2002 found that Plaintiff retained the ability to lift 10 pounds occasionally and less than 10 pounds frequently, as well as the ability stand or walk for at least two hours per eight hour workday, and sit for approximately six hours (Tr. 112). The report limited Plaintiff to occasional ramp and stairs climbing along with occasional balancing, stooping, kneeling, crouching, and crawling, finding further that Plaintiff was precluded from all work involving the use of ladders, ropes, or scaffolds (Tr. 113). The report found the absence of all manipulative,

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

visual, communicative, or environmental limitations, noting in conclusion that although Plaintiff alleged the need for a walker, she continued to perform routine household chores (Tr. 116).

In January, 2002, Plaintiff underwent a psychological evaluation performed on behalf of the SSA (Tr. 164-167). Firoza B. Van Horn, Psy.D., noted that Plaintiff cared for her three small children, drove, and socialized with her friends (Tr. 165). Van Horn reported that Plaintiff exhibited adequate grooming, good posture, and did not appear to experience any pain while sitting for a two-hour exam (Tr. 165). After reviewing the results of Plaintiff's IQ testing, Van Horn found that Plaintiff's performance IQ score of 70 appeared "to be a poor indication of her abilities in this area" (Tr. 166). Van Horn concluded her report by opining that the disparity between Plaintiff's scores on various portions of the exam "may be due to lack of motivation," stating further that Plaintiff's "[f]ull IQ score is lower than expected given her life style, her ability to independently care for her children, maintain a home, shop, cook, drive and keep up with the day to day living " (Tr. 167).

In March, 2003, Jackson E. Turner, Ph.D., administered tests to determine intellectual functioning, indicating slightly higher scores than those given by Van Horn the previous year (Tr. 188). Turner found that Plaintiff exhibited "excellent motivation," noting she displayed "personal strength in short-term memory for auditory stimuli, and personal weaknesses in numerical and analogic reasoning" (Tr. 188-189).

A Psychiatric Review Technique conducted on February 3, 2002 found that Plaintiff experienced mild limitations in activities of daily living and social functioning with moderate

deficiencies in concentration, persistence, or pace (Tr. 129). Handwritten notes accompanying the analysis state that although Plaintiff dropped out of school in ninth grade, she currently cared for three children, cooked, cleaned, shopped, and read (Tr. 131). A Mental Residual Functional Capacity Assessment completed on the same day found that Plaintiff experienced a moderately limited ability to understand and remember detailed instructions, as well as moderate limitations in maintaining attention and concentration for extended periods (Tr. 107). The assessment found further that Plaintiff experienced moderate limitations in the ability to complete work without interruptions from psychologically based symptoms, respond appropriately to workplace changes, and set realistic goals (Tr. 108). Plaintiff was deemed "not significantly limited" in all other areas (Tr. 107-108).

### C.     Vocational Expert Testimony

VE Pauline Pegram testified that she held a Masters' Degree in rehabilitation counseling and had worked for over two decades "assisting people with various types of impairments to consider alternative work" (Tr. 258). She classified Plaintiff's former work as a cashier as unskilled at the light exertional level, personal caregiver work as unskilled at the heavy exertional level, and a stint as a machine operator as unskilled at the light exertional level, adding that Plaintiff did not possess transferrable skills (Tr. 259).

The ALJ posed the following question:

> "[A]ssume for the sake of this hypothetical that we have a person that's the Claimant's age, as her sex, as her educational level, and work experience, and assume also the testimony that you heard here this morning. Assuming those

>factors, would a person with Ms. Holloway's background be able to go back and perform any of the jobs she did in the past?

(Tr. 259). The VE replied that based on Plaintiff's alleged limitations, she would be incapable of all full time employment as a result of her daily use of narcotics and symptoms of depression (Tr. 260).

The ALJ then posed a second hypothetical question, again incorporating Plaintiff's age, gender, and educational level:

>"If I made a finding that a person with Ms. Holloway's background could perform, at the very most, a sedentary type job, one that would allow her to change positions, sit or stand off and on at will and continue to perform the assigned tasks. In addition, that the jobs not be performed at any unprotected heights, require any driving, or climbing, or work around dangerous or hazardous machinery, as well as being relatively simple and routine in nature, not requiring more than a few steps in the completion of the assigned tasks, jobs that would be low in stress, and have limited contact with the public, coworkers, and with supervisors, what kind of jobs, if any, would fall within the parameters of this hypothetical?"

(Tr. 261). The VE found that given the limitations set out in the second hypothetical, Plaintiff could perform "a small sub-set of sedentary occupations . . . working behind the scenes" which would entail "non-production line" type work (Tr. 261). She concluded that taking into account Plaintiff's absence of transferrable skills and the need for a sit/stand option, approximately 6,000 such jobs existed in the state economy, with 3,000 in the southeast Michigan area (Tr. 261). The VE stated that her findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT"), explaining however, that the DOT omitted discussion of sit/stand options, adding that her sit/stand conclusions were based on her own current information (Tr. 262). In response to questions from Mr.

Laritz, the VE stated the above job descriptions required "much lower level[s] of production" than required of conventional production line work (Tr. 262).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced "scoliosis, affective disorder, and borderline intellectual functioning, but did not experience an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" (Tr. 31).

ALJ Varga found that although Plaintiff could not perform any of her past relevant work, she possessed the residual functional capacity ("RFC") to perform a significant range of sedentary work that involved:

> "sedentary work with the ability to alternate between sitting and standing as needed, no work around protected heights, no driving, no climbing, no work around dangerous machinery, only simple and routine tasks, a low stress work environment, and limited contact with the public, co-workers and supervisors"

(Tr. 30-31).  He concluded that Plaintiff could perform the sedentary work of a visual inspector, sorter, and packager (Tr. 31).

The ALJ found Plaintiff's testimony "not fully corroborated by the objective medical evidence," pointing out that as of September, 2004, her treating physician found that she could perform a limited range of sedentary work (Tr. 28, 31).  The ALJ also cited Firoza B. Van Horn's speculation that "a lack of motivation" accounted for inconsistent results on an IQ exam (Tr. 28).  The ALJ noted further that Van Horn found the scores "inconsistent with the claimant's ability to care for her children, maintain her home, shop, cook and drive" (Tr.

28).  The ALJ found further that Plaintiff's claims of pulmonary trouble were undercut by the fact she continued to smoke, noting overall that her activities of daily living ("ADLs") reflected a "moderately active lifestyle" (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Treating Physician

Plaintiff contends first that the ALJ erred by rejecting her treating physician's October, 2001 disability finding. *Plaintiff's Brief* at 9. Citing *Felisky v. Bowen*, 35 F 3d 1027 (6th Cir. 1994), Plaintiff also argues that contrary to the administrative findings, her professed degree of limitation is supported by objective medical evidence *Id.* at 11.

In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) the court held that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference." In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Further, the "ALJ must 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2) (2004). *See also, Smith v. Commissioner of Social Sec.* --- F.3d —, 2007 WL 1040037 (6th Cir. April 9, 2007) ("Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits.")

Plaintiff's argument fails on the basis that the ALJ provided both good and ample reasons for rejecting her treating physician's October, 2001 disability opinion. First and most obviously, the ALJ found reasonably that Dr. Best superceded his own October, 2001 by finding in August, 2004 that "[Plaintiff's] job would have to allow a [sit/stand] position," thereby acknowledging that she was capable of at least a narrow range of work[3] (Tr. 28

---

[3]Best's August, 2004 opinion also states that Plaintiff was limited to sedentary lifting requirements (Tr. 240).

*referencing* Tr. 240).

Next, even before citing Best's August, 2004 finding, the ALJ permissively rejected Best's October, 2001 disability pronouncement by noting that Best's own examination notes from the same month contain findings inconsistent with a permanent inability to work, including his observations that Plaintiff did not exhibit muscle atrophy, continued to perform at least a portion of childcare responsibilities, and showed no signs of discomfort[4] (Tr. 28 *referencing* 174-176). Further, as pointed out by the ALJ, Plaintiff admitted in December, 2001 that while her back condition limited her activities, she continued to drive, cook, clean, shop, read, handle her own finances, and socialize (Tr. 76-77).

Likewise, in regard to Plaintiff's own credibility, the ALJ was permitted to use her admission that she continued to participate in a wide range of regular activities in rejecting her allegations of complete disability[5] (Tr. 76-77). Substantial evidence defeats her additional argument that pain and side effects of medication precluded all employment. In

---

[4]Although not discussed by the ALJ, Dr. Best's opinion can be further undermined on the basis that he issued his opinion of disability after apparently examining Plaintiff only *once* (Tr. 174). While Dr. Best may qualify as a "treating" physician on the basis of his subsequent role in Plaintiff's care, "the length of the treatment relationship" must also be considered in weighing Best's October, 2001 opinion. *Wilson*, at 544.

[5]While the ALJ's findings do not contain reversible error on the basis of either a treating physician or credibility analysis, I do not agree with Firoza B. Van Horn's January, 2002 conclusion, later adopted by the ALJ, that Plaintiff's IQ score were due to "lack of motivation" (Tr. 167). That performance IQ score was within ten points of the results from an IQ test administered when Plaintiff was in second grade (Tr. 150) and also very similar to results obtained from a March, 2003 test (Tr. 188). However, I will allow for the possibility that Van Horn also inferred low motivation from non-testing factors such as Plaintiff's demeanor, conversation, etc.

January, 2002, examination notes state that during the course of a two-hour sit-down test, Plaintiff "[did] not appear to be in any physical pain. She was able to sit still for at least two hours to take a test" (Tr. 165).

### B.  Listing 14.09B

Plaintiff argues next that the ALJ erred in finding she was not disabled as a result of scoliosis at Step Three of his analysis. She contends that an August, 2001imaging study showing a 60 degree lumbothoracic curvature meets or equals the disability requirements of 20 C.F.R. Part 404, App. 1, Listing 14.09B.

To qualify for disability under Listing 14.09B, a claimant must establish:

"1. History of back pain, tenderness, and stiffness, *and*

 2.[f]indings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45 or more of flexion measured from the vertical position (zero degrees)" (emphasis added).

Imaging studies as well as other objective testing do not support a Step Three finding. Plaintiff's counsel erroneously relies on x-rays showing scoliosis of the thoracic spine measuring 60 degrees in arguing that Plaintiff has met or equaled the requirements of Listing 14.09B. However, as pointed out by Defendant, the 60 degree *curvature* of the spine does not relate to *fixation* of the spine at 45 degrees or less as required by the listing. Moreover, while Plaintiff's treating sources found a limited range of spinal motion as a result of scoliosis, none found that she was prone at a 45 degree angle or greater. The ALJ's decision clearly alluded to the Listing 14.09B's requirements by stating explicitly that neither Plaintiff nor any of her treating sources alleged that she is "bent forward to 45 degrees or

less" (Tr. 28).  Although an abundance of record evidence shows that Plaintiff experiences "back pain, tenderness, and stiffness," as listed in the first prong of Listing 14.09B, the absence of *any* evidence establishing the second prong fatally undermines this argument.

### C. Hypothetical Question

Finally,  Plaintiff maintains that the VE's job findings, ultimately adopted by the ALJ, stand unsupported by substantial evidence. *Plaintiff's Brief* at 14.   Citing *Bielat v. Commissioner,* 267 F Supp 2d 698 (E.D. 2003), she argues that ALJ's hypothetical question, which included the terms "simple and routine"and "low in stress" did not account for her "moderate" work related limitations.   *Plaintiff's Brief* at 14. She contends that the VE's testimony which was given in response to an inadequate hypothetical question was intrinsically flawed. *Id., citing* Tr. 107.      In *Varley v. Secretary of Health & Human Services,* 820 f.2d 777, 779 (6th Cir. 1987)  the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted).   *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

It seems clear that "moderate" deficiencies suggest substantial limitations which should be acknowledged in the hypothetical question.  In addition, the fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job.  *See, e.g.*, *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir.  1996);  *McGuire v. Apfel*, 1999 WL 426035, 15 (D. Or.

1999). Nor does the qualifier "low stress" effectively "capture the concrete consequences"of a plaintiff's limitations in pace. *Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir. 1996). Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

However, in the present case, ALJ Varga composed a hypothetical question abundantly supported by record evidence (Tr. 261-262). He supplemented the phrases "simple and routine" and "low in stress" with addition requirements that her work preclude "more than a few steps in the completion of the assigned tasks" as well as "limited contact with the public" (Tr. 261). Further, the VE testimony, given in response to that question, indicates that she accounted for Plaintiff's concentrational limitations in crafting her job findings:

> ". . . she's working behind the scenes, and would be able to work at a bench or table top, and on a non-production line per se, certainly so that the speed would not be set up external to her. . . . [the jobs] are unskilled and can be learned through short demonstration and a few verbal instructions if necessary"[6]

(Tr. 261-262). Contrary to Plaintiff's argument, I find not only the absence of reversible error, but note that the job findings by the VE to be exceptionally thorough and well-tailored to Plaintiff's occupational limitations.

This Court notes in closing that its conclusion recommending the grant of summary

---

[6]As discussed, *supra*, VE Pegram testified that she held a Masters' Degree in rehabilitation counseling, working for almost three decades "assisting people with various types of impairments to consider alternative work" (Tr. 258).

judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments as a result of scoliosis. However, based on a review of this record as a whole, it is evident that the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                S/R.  Steven Whalen
                                R.  STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

Dated:  April 13, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 13, 2007.

                                S/Gina Wilson
                                Judicial Assistant